**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SALVADOR G. HERNANDEZ**                           **CIVIL ACTION**

**VERSUS**                                          **NO. 06-1143**

**MICHAEL J. ASTRUE,**                              **SECTION "F" (3)**
**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**

## REPORT AND RECOMMENDATION

Plaintiff, Salvador Gonzalez Hernandez, seeks judicial review pursuant to 405(g) of the Social Security Act (the "Act") of the final decision of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for benefits under the Social Security Act.  42 U.S.C. § 405(g) *et seq*.   This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B). Plaintiff's appeal was submitted on memoranda and the Administrative Record of the proceedings before the Commissioner.

Considering the memoranda, administrative record, and the applicable law, for the reasons set forth in the captioned report below, the undersigned United States Magistrate Judge RECOMMENDS that the Plaintiff's Motion for Summary Judgment [Rec. Doc. 14] be DENIED, the Commissioner's Motion for Summary Judgment [Rec. Doc. 16] be GRANTED and that

1

plaintiff's case be DISMISSED WITH PREJUDICE.

## I. PROCEDURAL BACKGROUND

On March 3, 2004, the plaintiff, Salvador G. Hernandez ("Hernandez"), filed an application for Social Security benefits, alleging disability since July 29, 1994 due to discogenic/degenerative disc disease.[1]   On June 14, 2004, plaintiff's claim was denied[2] and he filed a timely request for administrative hearing.[3]  Pursuant to the July 13, 2005  hearing,[4] the Administrative Law Judge (ALJ) Glynn S. Voisin, determined that Hernandez was not disabled and thus ineligible for Disability Insurance Benefits and  Supplemental Security Income payments.[5]

The ALJ found that plaintiff, a 43-year-old individual who completed third grade in Mexico, had a "severe" physical impairment of degenerative disk disease at L-5/S-1 but that the aforesaid impairment was not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  In this regard, ALJ Voisin specifically noted that the plaintiff worked full time until February 13, 2004 when he was "laid

---

[1]*See* Leads Protective Filing Worksheet [Adm. Rec. 45]; Application for Disability Insurance Benefits dated March 3, 2004 [Adm. Rec. 46-48]; Application for Supplemental Security Income Benefits dated March 3, 2004 [Adm. Rec. 279-282].

[2]*See* Disability Determination and Transmittal (noting that the claimant's condition was not severe enough to preclude gainful employment) [Adm. Rec. 26-30];

[3]Request for Hearing by Administrative Law Judge dated June 22, 2004 [Adm. Rec. 31].

[4]*See* Transcript of July 13, 2005 Hearing [Adm. Rec. 284-314].

[5]ALJ Glynn S. Voisin's August 11, 2005 Decision [Adm. Rec. 12-24].

off."[6]  Plaintiff testified that he applied for jobs after February 13, 2004 but was not hired.[7]

Based upon the collective medical opinions and findings of plaintiff's treating physicians, state

medical consultants and diagnostic test results, the ALJ found that plaintiff was unable to

perform any of his past relevant work – semi-skilled work for six years as a roustabout and

unskilled work for ten years as a sandblaster/painter – but that consistent with the opinion of VE

Ryan, plaintiff was capable of performing light level work as a food preparer, parking lot

attendant and a packer/packager.[8]

The ALJ's  hypothetical question to the VE regarding work that the plaintiff was capable

of performing included a full range of light level work with postural limitations including

occasional climbing and occasional kneeling/crouching/crawling.  ALJ Voisin found that there

were no manipulation, visual or communicative limitations precluding unskilled light level work.

Considering the plaintiff's impairment, postural/environmental limitations and a person with the

same age, educational background and past work background as Hernandez, VE Ryan testified

that the plaintiff could perform the aforesaid light level occupations which exist in the national

economy in significant number.  Crediting the testimony of the VE, the ALJ concluded that the

plaintiff was not disabled.[9]

Plaintiff timely requested review of the Hearing Decision and Order.[10]  On review, the

---

[6]*Id.* [Adm. Rec. 16].

[7]*See* Hearing Transcript [Adm. Rec. 303].

[8]ALJ Voisin's Decision [Adm. Rec. 22].

[9]ALJ Voisin's Decision [Adm. Rec. 22]; Transcript of Hearing [Adm. Rec. 310-311].

[10]*See* Request for Review of Hearing Decision/Order [Adm. Rec. 11].

Appeals Council considered the contentions set forth in plaintiff's representative's letter dated October 14, 2005 and determined that the information did not provide a basis for changing the ALJ's decision.[11]  Hernandez filed his complaint in the captioned matter pursuant to 42 U.S.C. § 405(g).  The parties agree that issues are amenable to summary disposition.[12]

## II. APPLICABLE LAW

### A.  Standards of Review

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.[13]  If the Commissioner's findings are supported by substantial evidence they must be affirmed.[14]

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.[15]  It is more than a scintilla, but may be less than a preponderance.[16]

---

[11]Notice of Appeals Council Action dated January 13, 2006 [Adm. Rec. 5].

[12]*See* Plaintiff's Motion for Summary Judgment [Fed. Rec. Doc. No. 14]; and Commissioner's Cross-Motion for Summary Judgment [Fed. Rec. Doc. No. 16].

[13]*See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993); *Carriere v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).

[14]*Martinez,* 64 F.3d at 173.

[15]*Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Spellman,* 1 F.3d at 360.

[16]*Id.*

4

A district court may not try the issues *de novo*, reweigh the evidence or substitute its own judgment for that of the Commissioner.[17]   The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[18]   However, the district court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.[19] Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive.[20]

## B. Entitlement to Disability Benefits under the Act

To be considered disabled and eligible for disability benefits under the Act, the plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[21] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[22]   The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful

---

[17]*Ripley*, 67 F.3d at 555; *Spellman,* 1 F.3d at 360; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

[18]*See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

[19]*Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

[20]*Ripley,* 67 F.3d at 555.

[21]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[22]20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 (1995).

5

activity.[23]

The five-step procedure for making a disability determination under the Social Security

Act was cogently restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001):

> The Social Security Act defines "disability" as the "inability to engage in any
> substantial gainful activity by reason of any medically determinable physical or
> mental impairment which can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less than 12 months."  To
> determine whether a claimant is disabled, and thus entitled to disability benefits, a
> five-step analysis is employed.  First, the claimant must not be presently working
> at any  substantial gainful activity. Second, the claimant must have an impairment
> or combination of impairments that are severe.  An impairment or combination of
> impairments is "severe" if it "significantly limits [a claimant's] physical or mental
> ability to do basic work activities."  Third, the claimant's impairment must meet or
> equal an impairment listed in the appendix to the regulations.  Fourth, the
> impairment must prevent the claimant from returning to his past relevant work.
> Fifth, the impairment must prevent the claimant doing any relevant work,
> considering the claimant's residual functional capacity, age, education, and past
> work experience.  At steps one through four, the burden of proof rests upon the
> claimant to show he is disabled.  If the claimant acquits this responsibility, at step
> five the burden shifts to the Commissioner to show that there is other gainful
> employment the claimant is capable of performing in spite of his existing
> impairments.  If the Commissioner meets this burden, the claimant must then
> prove he in fact cannot perform the alternate work.[24]

The four elements of proof weighed in determining whether evidence of disability is

substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining

physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age,

education, and work history.[25]   "The Commissioner, rather than the courts, must resolve conflicts

---

[23]*Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990).

[24]*Shave*, 238 F.3d at 594 (*quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)).

[25]*Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995).

in the evidence."[26]

## C. Medical Opinions of a Treating Source

The ALJ must follow the Guidelines set forth in 96-2p to determine whether "controlling weight" should be given medical opinions of a "treating source."  These guidelines are that: (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence.  Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."  (SSR 92-2p)

The factors provided in 20 C.F.R. 404.1527 and 416.927 include: (1) Examining relationship; (2) Treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) Supportability; (4) Consistency; and (5) Specialization.[27]  Suffice it to say, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."[28]

---

[26]*Id.*

[27]Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist. *Moore* v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990).  However, specialization is only one of several factors considered in the evaluation of medical opinions.

[28]*Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir. 2001)(finding that the ALJ's limited rejection of opinions and medical records provided by treating physician justified by the character of records

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status."[29]  No special significance is accorded to the source of an opinion on issues reserved to the Commissioner, such as whether impairments singly or in combination meet or equal the requirements for impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is known as the Listing of Impairments.  Where there is conflicting evidence regarding an issue reserved for the Commissioner, he has the responsibility to resolve that conflict.  The final decision on whether a claimant is disabled for purposes of the Act is a legal one rather than a medical one, and that determination may be made only by the Commissioner.[30]

In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when the evidence supports a contrary conclusion.[31]

### III. ASSIGNMENTS OF ERROR

Plaintiff alleges that the ALJ erred in the following enumerated particulars, to wit:

(1) there is a lack of substantial evidence supporting the ALJ's determination that plaintiff can

---

provided  and supported by medical evidence from other treating an reviewing physicians); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

[29]*Moore v. Sullivan,* 919 F.2d at 905.

[30]*See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989); *Moore,* 919 F.2d at 905.

[31]*See Greenspan*, 38 F.3d at 237(holding that the Act empowers the Commissioner to analyze the physicians' testimony and when substantial evidence supports the ALJ's decision to disregard a physician's conclusions, that basis alone is enough to survive judicial review); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman,* 1 F.3d at 364; *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

perform light work; (2) the ALJ failed to develop the record with respect to the plaintiff's post-hearing allegation of illiteracy; (3) the ALJ failed to sustain his burden of establishing "other work" that plaintiff is capable of performing; and (4) the ALJ failed to specifically address the *Watson* criteria, *i.e.*, whether the plaintiff could sustain employment.

The Commissioner counters that substantial evidence supports the ALJ's decision. Defendant specifically addresses each of the plaintiff's assignments of error, highlighting the following facts, to wit: (1) not one of the eight medical specialists with whom plaintiff treated or consulted regarding his orthopedic ailments found that plaintiff was unable to work due to pain or other limitation; (2) each of the medical providers/consultants found plaintiff capable of at least light level exertion; (3) plaintiff's activities of daily living and the paucity of ongoing treatment records belie plaintiff's contention that he is "disabled"within the meaning of the Act; (4) plaintiff's limited education or lack of fluency in the English language is not attributable to a medically determinable impairment and therefore not properly considered as part of the functional capacity assessment (SSR 96-8P at * 2); (5) plaintiff's limited education or limited language skills was the subject of hearing testimony and adequately developed in the administrative record; (6) substantial evidence of record indicates that plaintiff  is functionally literate and capable of meeting the demands of the representative unskilled light level occupations identified by VE Ryan; (7) the *Watson* case is factually inapposite in that it involved a situation in which the claimant's *physical* ailment waxed and waned in its manifestation of disabling symptomotology;[32] and (8) plaintiff's back pain was not of sufficient severity to require ongoing prescription drug

---

[32]*See Frank v. Barnhart*, 326 F.3d 618, 619, 621-22 (5th Cir. 2003)(discussing *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002)); *Dunbar v. Barnhart*, 330 F.3d 670 (5th Cir. 2003).

therapy,  hospitalization or *prescribed* bed rest and, to the contrary, physical therapy/strengthening exercises were ordered and return to light level work was expressly prescribed by his treating physicians.

## IV.  ANALYSIS

### A. The ALJ's Characterization of the Medical Evidence is Thorough and Accurate.

The ALJ's step two and three findings are not disputed.  ALJ Voisin determined that the plaintiff "has a 'severe' physical impairment of degenerative changes at L5-S1 level, which has imposed more than 'a minimal limitation' on his ability to engage in basic work activity."[33]  The ALJ further found no impairment which meets or medically equals the severity requirements set forth in the Listing of Impairments found in Appendix I, Subpart P, Regulations No. 4.[34]

At the hearing, plaintiff's counsel amended the date alleged for the onset of disability from July 29, 1994 to February 14, 2003 consistent with plaintiff's work history.[35]  The Commissioner correctly notes that the majority of the plaintiff's medical records/treatment predate February 14, 2003.

The record reflects that, since July of 1994, the plaintiff was treated conservatively for lumbar pain, which was attributed to an on-the-job lower back injury.[36]  From August of 1994 to September of 1995, plaintiff was treated by Dr. Richard Landry who admitted Hernandez for

---

[33]ALJ Voisin's Decision [Adm. Rec. 7-10].

[34]*Id.*

[35]Transcript of Hearing [Adm. Rec. 288].

[36]*See* Our Lady of the Sea Occupational Health Center Records dated 7-24 94 [Adm. Rec. 111]; Houma Orthopedic Clinic Records (noting that plaintiff reported that he was picking up a paint pot and twisted his back)[Adm. Rec. 195].

10

epidural steroid injections.  At that time, an MRI showed mild dessication of the L5 disc with

posterior and left lateral bulge.[37]   On September 19, 1994, Dr. Landry recommended that

Hernandez return to "light duty work;" thereafter, on October 17, 1994, plaintiff was permitted to

return to his "regular work duties."[38]   An MRI conducted on September 12, 1995 revealed a 2-3

mm left paracentral protrusion.  Based upon those findings and recurrent problems, Dr. Landry

opined that plaintiff was a candidate for surgery, recommended a lumbar laminectomy and

discectomy and found that plaintiff was unable to return to work at that time.[39]

       Plaintiff was referred to Dr. David W. Aiken, Jr. for a second opinion.  Dr. Aiken

completed a lumbar assessment noting that Hernandez's pain symptomotology was not constant

and was limited to his back.  Dr. Aiken's records further indicated that plaintiff ambulated with a

normal gait, had no motor or sensory deficits and that he was in overall good health.   Surgery

was not recommended.  Instead, Dr. Aiken prescribed moist heat, range of motion exercises for

the lumbar spine and a muscle relaxer (Flexeril).[40]  His impression was that plaintiff presented

symptoms of lumbar dysfunction on extension and flexion with nerve root adherence.[41]  Dr.

Aiken's opinion follows, to wit:

> [T]he patient returned to the care of Dr. Landry and a repeat lumbar MRI scan was
> performed on September 12, 1995.  I reviewed the films of this MRI scan with the
> patient today.  The MRI scan does show a *small* disc protrusion on the left at L5-
> S1 *and no other abnormality.  This is no change from his previous MRI scan of*

---

[37]*See* Terrebonne General Medical Center Records dated 9-16-94 [Adm. Rec. 128].

[38]*See* Houma Orthopedic Clinic Records [Adm. Rec. 189].

[39]*Id.* at 186.

[40]See Dr. Aiken's Examination Records [Adm. Rec. 150-154].

[41]*Id.* at 149

*September 1994.*

The patient tells me he is still having low back and left leg pain. He does not feel he has improved.  Physical examination today shows low back with straight leg raising on the left, *but no leg pain.*  This is an improvement over his last examination.

* * *

I feel that a disc rupture this small should be able to heal without surgery.  I recommend that he get in a low back brace and begin a walking program.

I feel that Dr. Landry has treated the patient appropriately thus far.  I feel it is a difference in opinion rather than a difference in absolute right-and-wrong which would make him want to operate right now and make me want to wait.

*At the present time* I have asked the patient not to work, to wear his low back brace, and to start a walking program.  I plan to see him in three weeks....[42]

As of October 24, 1995, plaintiff's condition was vastly improved.  He was walking two to five miles a day, feeling much better and experiencing only occasional soreness in the low back.  Physical examination revealed "no tenderness or muscle spasm in the low back area" and "forward flexion reach[ed] 90 degrees with*out* pain."[43]  Dr. Aiken's impression was that Hernandez had made good progress with his brace and he recommended continuing the walking program.[44]

In December of 1995, after a four week "hardening program," plaintiff reported that he was "doing 'alright" and that he was "feeling better."[45]  Physical therapy records further indicated that more focus would be placed upon body mechanics and lifting techniques to prepare

---

[42]Dr. Aiken's Opinion dated October 2, 1995 (italicized emphasis added) [Adm. Rec. 143].

[43]Dr. Aiken's Opinion dated October 24, 1995 (italicized emphasis added) [Adm. Rec. 142].

[44]*Id.*

[45]Dr. Aiken's Orthopaedic Progress Notes dated December of 1995  (noting full range of motion, physical therapy strengthened the patient and that he should to return in 6 weeks) [Adm. Rec. 137,139].

Hernandez for return to work.[46]  On December 21, 1995, Dr. Aiken released the plaintiff to return to full time work.[47]

On January 7, 1997, Dr. Aiken noted that the plaintiff was working full time as a painter and experiencing a little soreness.  Plaintiff exhibited full range of motion with no tenderness and no leg pain.  X-rays were normal and had not changed since 1994.  Dr. Aiken recommended that plaintiff continue to work full time utilizing his back brace and return in one year.[48]

On December 9, 1998, Dr. Aiken noted that the plaintiff lost his back brace and began wearing a lifting belt instead.  Hernandez was advised to get a new corset, wear it at all times and continue working full time.  Upon his return on February 24, 2000, Dr. Aiken again recommended that plaintiff get new lumbosacral corset brace, continue working full-time and return for a check-up in one year.[49]

On September 30, 2002, Dr. John P. Sweeney conducted a neurological examination of the plaintiff and the results were all within normal limits. Dr. Sweeney noted that the patient's English was not "very good" and that plaintiff was working limited duty.  On October 2, 2002, the plaintiff's examination was normal, but a course of physical therapy was started to address plaintiff's reported discomfort.  On November 4, 2002, Dr. Sweeney noted that the Hernandez'

---

[46]Physical Therapy Record dated November 27, 1995 [Adm. Rec. 138].

[47]*See* Dr. Aiken's Opinion Letter dated December 21, 1995 (noting that, as a result of therapy, the patient's back is strong, he has full range of motion and no pain) [Adm. Rec. 136]; Dr. Aiken's Opinion Letter dated February 6, 1996 (noting no tenderness, no muscle spasm, full range of motion, straight leg raising negative, normal reflexes, good recovery and that Hernandez can continue working full time – *i.e.*, eleven hours a day, six or seven days a week) [Adm. Rec. 135].

[48]*See* Dr. Aiken's Opinion Letter dated January 7, 1997 [Adm. Rec. 134].

[49]*See* Dr. Aiken's Opinion Letters dated December 9, 1998 and February 24, 2000 [Adm. Rec. 131-132].

examination was normal and he was released to "full and unrestricted duty."[50]

An MRI of the lumbar spine performed on December 12, 2002 revealed dessication of the L5 disc with a 1 to 2 mm disc bulge with no focal abnormality and no evidence of foraminal encroachment or spinal stenosis. The results also indicated mild dessication of the L4 disc and the remainder of the disc space levels were unremarkable.[51]

Dr. Neil Maki began treating Hernandez in January of 2003 and released plaintiff to return to work in March of 2003. Dr. Maki reviewed the December 12, 2002 MRI, noting (1) mild lumbar degenerative changes at L4 and L5 and (2) no evidence of foraminal encroachment or nerve root compression. Consistent with plaintiff's prior successful conservative treatment, Dr. Maki recommended a stretching and strengthening program. Dr. Maki did not restrict plaintiff from work activities but did advise against heavy lifting, climbing and *repetitive* bending. On plaintiff's second visit (February 11, 2003), Dr. Maki indicated that over-the-counter pain medication was sufficient and restrictions on work activity included avoiding heavy lifting, climbing and crawling activities. Plaintiff last presented to Dr. Maki on March 18, 2003. Findings included that plaintiff's strength was intact, some limited motion of his back, no true root tension signs and no reflex asymmetry. Dr. Maki indicated that he would allow work activities that do not involve *repetitive* heavy lifting over forty pounds, crawling or climbing. He noted that conservative care was appropriate and that he would recommend retraining for alternate employment.[52]

_____

[50]*See* Dr. John P. Sweeney's Treatment Notes [Adm. Rec. 173-164].

[51]*See* MRI-Lumbar Spine dated December 12, 2002 [Adm. Rec. 162].

[52]*See* Dr. Neil Maki's Treatment Notes dated January 8, 2003, February 11, 2003 and March 18, 2003 [Adm. Rec. 201-202]. *See also* Dr. William H. Kinnard's February 26, 2003 Assessment

On January 7, 2004, plaintiff presented himself to Leonard J. Chabert Medical Center Orthopedic Clinic with complaints of low back pain.  Clinic notes indicate that plaintiff was unemployed *due to lack of work at his prior job*.  The diagnosis was degeneration of L5-S1 disc space and sciatica and the treatment plan included an X-ray series, Motrin and abdominal strengthening.[53]  Plaintiff returned again on May 10, 2004 complaining of sciatica and that Motrin did not help.  The assessment was L5-S1 degenerative disc disease and Elavil was prescribed.[54]

On June 2, 2004, Dr. Christopher E. Cenac evaluated the plaintiff at the request of the Social Security Administration.  Dr. Cenac recommended light level work activities with the following permanent restrictions, to wit: (1) fifteen pound lifting restriction and (2) no *repetitive* stooping, squatting, twisting, kneeling, bending or climbing.  Dr. Cenac observed no atrophy of either lower extremity, no muscle spasm, no point tenderness, heel toe walking without difficulty and full range of motion function bilaterally.  Dr. Cenac found *no communicative limitations*.[55]

On May 25, 2005, plaintiff presented himself for a follow-up visit at Chabert's Internal Medicine/Family Practice Clinic.  His neurological and musculoskeletal examination was

---

(finding no spasm, only mild limitation of motion, neurologically intact, negative straight leg raising test, mild disc dessication, no evidence to suggest lumbar disc herniation and concluding aggravation of a preexisting injury, permanent restriction from only *heavy* labor, capable of regular lifting in the 25 to 35 pound range and activities such as stooping, squatting, turning, crawling and twisting should be permitted on an occasional basis) [Adm. Rec. 184-185].

[53]*See* Chabert Orthopedic Clinic Notes dated January 1, 2004 (also noting normal vertebral bodies, alignment/interspaces well preserved, pedicles intact and loss of normal lordotic curve which may be due to spasm) [Adm. Rec. 237-238].

[54]*Id.* at 236

[55]*See* Dr. Cenac's Opinion Letter dated June 2, 2004 and Range of Motion Form [Adm. Rec. 205-209].

completely normal.[56]

## B. Residual Functional Capacity

The Social Security regulations and rulings provide guidance for the ALJ in determining a claimant's RFC.  See 20 C.F.R. §§ 404.1545, § 416.945; and SSR 96-8p. Specifically, the regulations provide that an RFC is "an assessment based upon all of the relevant evidence."  20 C.F.R.  § 404.1545(d).   In addition, SSR 96-8p provides that the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure the file contains sufficient evidence to assess the RFC."  SSR 96-8p.  The RFC assessment must always consider and address *all* medical source opinions.  *Id.*  SSR 96-8p states that an ALJ's assessment of claimant's RFC must contain a "thorough discussion of the objective medical evidence," as well as discuss how, "any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*   Social Security Ruling 96-8p provides that residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  "The RFC assessment is a function-by- function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  *Id.* (*quoting* 61 Fed. Reg. 34474-01 (July 2, 1996)).   Therefore, inherent in every residual functional capacity assessment is a finding that the claimant can perform work on a regular and continuing basis, and thus can maintain employment.  *See* 20 C.F.R. S 404.1545(b).  The Fifth Circuit considers these regulations and rulings to be relevant to any decision.  *Myers v. Apfel*, 238 F.3d 617, 620 (5th

---

[56]Adm. Rec. 222.

Cir.2001).

The ALJ complied with the applicable regulations discussed above.  It is clear that the ALJ performed the appropriate analysis with respect to the plaintiff's treating physicians' assessments. In this regard, the ALJ relied collectively on plaintiff's treating specialists and the consulting examiner (*i.e.*, Drs.  Landry, Aiken, Sweeney, Kinnard, Maki and Cenac).  With the exception of Landry, the specialists' reports, findings and conclusions do not conflict in any significant aspect regarding the plaintiff's condition.  To the extent that it can be argued that there is conflicting evidence, it is the responsibility of the ALJ, not the court, to resolve conflicts in the evidence.[57]

In addition to the medical records, the ALJ properly considered the plaintiff's activity level in assessing both his residual functional capacity and his credibility.  Plaintiff testified that he sleeps well and that his daily activities include cooking, cleaning, sweeping, mopping, dishwashing and getting his boys ready for school.[58]  Plaintiff takes care of all of his own personal needs, has an unconditional driver's license and even drove himself to the hearing.  Hernandez indicated that he watches sports on television, reads the sports section of the newspaper and can make change at the store.  Plaintiff's hearing testimony that he walks two miles a day is corroborated by treating specialists' records discussed above.  Indeed, the plaintiff's activity level can only be characterized as hearty/healthy.

Regarding the plaintiff's ability to communicate (literacy), the administrative record fully supports the determination that Hernandez is functionally literate and has sufficient command of

---

[57]*Martinez,* 64 F.3d at 174.

[58]Transcript of Hearing [Adm. Rec. 296, 304].

the English language such that he capable of performing the light level work identified by VE Ryan.  Plaintiff worked as a roustabout for six years and a painter/sandblaster in a shipyard for a decade.  Additionally, the defendant testified that, when assigned to light level work at the shipyard, he operated a crane.  The plaintiff's steady work history for a period of sixteen (16) years in dangerous jobs (which require the ability to communicate with co-workers and supervisors), his daily activities and activity level belie plaintiff's counsel's suggestion that the plaintiff is functionally illiterate or unable to communicate in English.  Indeed, the only treating physician of record to restrict the plaintiff from *all* work was Dr. Landry and that was based solely upon his opinion that the plaintiff was a candidate for back surgery and not plaintiff's alleged "limited language skills."   The ALJ fully discussed all of the salient permutations of the medical reports, resolving any conflict to the extent that it might be viewed as even *superficially* conflicting.

Neither the medical records, nor the plaintiff himself has suggested that he has any mental deficit.  Moreover, full time work at the shipyard – *i.e.*, eleven hours a day/six days a week according to plaintiff's own testimony– did not cease until he was laid off due to lack of work.  Most notably and with respect to his ability to return to work, plaintiff testified as follows, to wit:

> Q. Okay. Why can't you work?
> A. Well, I applied for some jobs and didn't get hired.[59]

### C. Credibility

In addition to conflicts in the medical evidence, credibility determinations are peculiarly the province of the ALJ.[60]   The ALJ's assessment of the claimant's credibility is accorded great

---

[59] Transcript of Hearing [Adm. Rec. 301].

[60] *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999).

18

deference.[61]   The record lacks medical findings that corroborate any impairment which significantly affected the claimant's residual functional capacity to perform light level work.   An ALJ has the discretion to evaluate credibility and to arrive at an independent judgment regarding pain as well as the duty to ultimately determine disability on the basis of the claimant's residual functional capacity to engage in gainful employment.

It is apparent to the Court that the ALJ did consider the claimed non-exertional limitation (back pain) and determined that it was only slight and had a minimal effect on plaintiff's ability to work.   The ALJ made this determination in light of the plaintiff's hearing testimony and the administrative record, including the statements made to and reported by his treating physicians. ALJ Voisin sufficiently explained that the medical treatment records considered together with the plaintiff's own testimony do not support plaintiff's allegations of *debilitating* chronic back pain.[62]

The issue at this level of review is whether substantial evidence supports the ALJ's rejection of Plaintiff's subjective complaints of  *disabling* symptoms in light of the objective medical evidence, *inter alia*.  This Court finds that there is substantial evidence to support the ALJ's conclusion rejecting Hernandez's testimony regarding *disabling* pain.  The ALJ's assessment comports with the legal standards outlined in Ruling 96-7p.

### D. Duty to Develop the Record/RFC Assessment

It is undisputed that the burden to prove disability in a social security case is on the claimant.  Nevertheless, a social security disability hearing is nonadversarial, and the ALJ bears the responsibility to ensure that an adequate record is developed during the disability hearing

---

[61]*See Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002) (stating that the ALJ has the responsibility to resolve questions of credibility).

[62]*See* ALJ Voisin's Decision [Adm. Rec. 16-24].

consistent with the issues raised.  Generally, the ALJ has a duty to develop the record by obtaining the pertinent, available medical records.[63]  The ALJ has the power to subpoena such records if necessary.[64]  If the ALJ does not have before him sufficient facts upon which to make an informed decision, his decision is not supported by substantial evidence.[65]

Here, the administrative record contains all of the plaintiff's medical treatment records dating back to July of 1994 and not one suggests any mental impairment or communication deficit tantamount to "functional illiteracy."  As aforestated, Dr. Cenac examined the plaintiff and concluded that the plaintiff had *no communication deficit*.   Moreover, there is no suggestion in the record that the plaintiff has any mental impairment.  The ALJ fulfilled his duty to make a record which was sufficient for purposes of performing the requisite analysis.

Most notably, absent evidence of a mental impairment, education is a vocational factor that is properly considered at Step 5 in the determination of what jobs the plaintiff is capable of performing.  Illiteracy is used as the starting point or benchmark in evaluating plaintiff's education.[66]  Even at this juncture of the proceedings, Hernandez's alleged difficulty communicating in English is not attributed to *any* medically determinable impairment.  A just and valid administrative determination requires at a minimum consideration of all alleged

---

[63] SSR 96-8p provides that the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure the file contains sufficient evidence to assess the RFC."  SSR 96-8p

[64] 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1).

[65] *See Harris v. Massanari,* 2002 WL 10466 *3 (E. D. La.) (Vance, J.) (*citing McGee v. Weinberger,* 518 F.2d 330, 332 (5th Cir. 1975).

[66] 20 C.F.R. §§ 404.1564 and 416.964.

impairments.[67]  The administrative proceedings in this case clearly exceed that standard.

The case law teaches that reversals based upon a failure to develop the record require a showing of prejudice.[68]   At the outset, the Court observes that this case is nothing like the inadequate inquiry line of cases, typified by *Kane v. Heckler,* 731 F.2d 1216 (5th Cir. 1984), wherein the ALJ conducted a five-minute hearing transcribed in four pages and asked a single question of a *pro se* claimant.  In the case at bar, ALJ Voisin allowed plaintiff's counsel to examine Hernandez at the outset of the hearing, the ALJ himself thoroughly questioned the plaintiff and then allowed redirect.  The ALJ posed a series of hypothetical questions to the vocational expert and further allowed plaintiff's counsel the opportunity to pose questions to the VE on plaintiff's behalf, thereby fulfilling the inquisitorial function.[69]

The administrative hearing addressed Hernandez's alleged physical condition and pain symptomotology, his educational background, work experience, responsibilities, daily activities and how plaintiff's symptoms affected his ability to function in daily life.  The fact that plaintiff exhibited some difficulty understanding a *legal* term or term of art incorporated in plaintiff's counsel's examination – for instance, "to return to the workforce, what *accommodation* do you think you would need"[70] – does not begin to suggest the that plaintiff was illiterate, functionally illiterate or that his ability to communicate on-the-job in English was significantly attenuated.

The examination of the plaintiff by both the ALJ and plaintiff's counsel (twice) on all of

---

[67]*See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000).

[68]*Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir. 1984).

[69]*See* Transcript of July 13, 2005 Hearing [Adm. Rec. 289-313].

[70]*Id.* at 305.

the pertinent topics, together with the Administrative Record as it is presently constituted, is sufficient to satisfy the duty imposed by *Kane, supra.*[71]   ALJ Voisin fulfilled his duty to develop the relevant facts so that he could fully and fairly evaluate Hernandez's claim for disability benefits.[72]  Plaintiff's counsel clearly indicated at the outset of the hearing that she had no additional medical evidence.  Following her examination /redirect of the plaintiff and ALJ Voisin's examination of VE Ryan, plaintiff's counsel indicated that she had no additional questions for the vocational expert.[73]

Finally, the ALJ relied upon the vocational expert's testimony and not a mechanical application of the medical vocational guidelines (GRIDS).  VE Ryan indicated affirmatively that the he studied the record, heard the plaintiff's testimony, was familiar with the Commissioner's regulations/definitions and needed no additional information to assist him in Hernandez's case.[74]  Plaintiff's assignment of error (failure to develop the record) is without merit.

### E.  Hypothetical Question

The Fifth Circuit has previously considered the question of the circumstances under which a vocational expert's answer to a hypothetical question posed by an ALJ can provide substantial evidence supporting the denial of benefits.[75]   In *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994),

---

[71]*See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Carrier v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991); *James v. Bowen*, 793 F.2d 702, 704-05 (5th Cir. 1986) (distinguishing *Kane v. Heckler*, 732 F.2d 1216 (5th Cir. 1984)).

[72]*See* Transcript of the Hearing [Adm. Rec. 313].

[73]*Id.* [Adm. Rec. 276].

[74]*Id.* [Adm. Rec. 307-308].

[75]*Boyd v. Apfel,* 239 F.3d 698, 706-07 (5th Cir. 2001); *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994).

the court enunciated a two-part standard for determining when a hypothetical question constitutes reversible error, to wit:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate all of the disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, a determination of non-disability based on such a defective question cannot stand.[76]

The hypothetical question posed by the ALJ incorporated all of the plaintiff's actual limitations as established by the record during the pertinent time frame and accepted by the ALJ as true.[77]   As previously stated, substantial evidence of record (including but not limited to the plaintiff's own hearing testimony) indicates that he is not illiterate.  VE Ryan testified that, given the plaintiff's age, educational background, work history, testimony and limitations credited by the ALJ, Hernandez was capable of performing work as a food preparer, parking lot attendant and packer/packager.[78]   VE Ryan further testified that the aforesaid listed occupations comprise a "*representative* list" as opposed to a definitive or exhaustive listing.  Additionally, the vocational expert noted that the definitions of the aforesaid occupations are consistent with those found in the Dictionary of Occupational Titles (DOT).[79]   At the hearing, ALJ Voisin specifically posed a hypothetical question incorporating the limitations of plaintiff's impairment and his residual functional capacity – *i.e.*, light work with exertional limitations defined in the first hypothetical adding the environmental  and postural limitations of avoiding exposure to heights and only

---

[76] *Bowling,* 36 F.3d at 436.

[77] *See* Transcript [Adm. Rec. 308-312].

[78] *Id.* [Adm. Rec. 310-311].

[79] *Id.* [Adm. Rec. 313].

occasional climbing, kneeling, crouching and crawling and no manipulative, visual or communicative limitations.  Based upon the record as whole and plaintiff's own testimony, the ALJ rejected plaintiff's claims of *disabling* back pain and communicative limitations including any limitation with respect to concentration, persistence or pace.  Substantial evidence of record supports the aforesaid findings.

As the Commissioner highlights, the unskilled level required for the occupations identified by VE Ryan are consistent with plaintiff's capabilities.   The occupations of food preparer and parking lot attendant are identified as SVP 2, which require only a minimal training period (up to one month).  The packer/packager position has an SVP of 1, which requires only a short demonstration to learn.  Plaintiff was only 43 years old at the time of decision and thus a "younger individual" as defined in the pertinent regulations.[80]  The Regulations explain that literacy or the ability to communicate in English *has the least significance* <u>for a "younger individual"</u> (such as the plaintiff) relegated to the realm of unskilled[81] light  and sedentary work, because the bulk of such work relates to working with objects (rather than working with people or data).

Contrary to the plaintiff's argument, the ALJ did in fact make a specific finding regarding

---

[80]*See* 20 C.F.R. §§ 404.1563(c) and 416.963(c).

[81]The skill requirements are set out in 20 C.F.R. 404.1568. The Regulation describes unskilled work, 404.1568(a) semi-skilled work, 404.1568(b) and skilled work, 404.1568(c). Unskilled work is just simple duties which require for example only handling, and can usually be learned in thirty (30) days with little vocational preparation. No judgment is needed versus semi-skilled which does require more complex duties. A semi-skilled job is one where coordination and dexterity are necessary.

the plaintiff's 3rd grade education and lack of formal vocational training.[82]  Regarding the

plaintiff's language ability, the ALJ found that plaintiff is capable of reading English a little,

making change at a store, reading the newspaper, passing the motor vehicle driving test and

attaining a sufficient score on the tests administered by the State to allow him to obtain an

unconditional drivers' license.   More generally, the ALJ determined that Hernandez has "limited

language skills"[83] or a marginal education, *i.e.*, 3rd grade.[84]

---

[82]*See* ALJ Voisin's  Decision and Finding (noting that the claimant has a "3rd grade education," is capable of reading a little English and does not possess any vocational or military training) [Adm. Rec. 16, 22 and 23].

[83]*See* Transcript of Administrative Hearing (wherein plaintiff's counsel argued that Hernandez "*may* have some difficulty with vocational rehabilitation given his limited language skills" and at no time was it either argued or apparent that plaintiff was "illiterate") [Adm. Rec. 288].

[84]**§ 404.1564 of the Regulations entitled "Your education as a vocational factor" provides:**
"(a) General.  **Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements**, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. *Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education.  Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.*
(b) How we evaluate your education.  The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting.  Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work.  Therefore, **the numerical grade level that you completed in school may not represent your actual educational abilities.  These may be higher** or lower.  However, **if there is no other evidence to contradict it**, *we will use your numerical grade level to determine your educational abilities.*  **The term education also includes how well you are able to communicate in English** since this ability is often acquired or improved by education.  In evaluating your educational level, we use the following categories:
(1) Illiteracy.  Illiteracy means the inability to read or write.  We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.  *Generally,* an illiterate person has had little or no formal schooling.
**(2) Marginal education.  Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs.  We generally consider that formal schooling at a 6th grade level *or less* is a marginal education.**
(3) Limited education.  Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs.  We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
* * *
(6) Information about your education.  We will ask you how long you attended school and whether you are able to speak, understand, read and write in English and do at least simple calculations in arithmetic.  We will also consider

The Court highlights the fact that no interpreter accompanied Hernandez to or was sworn at the administrative hearing.  Plaintiff  testified in English in response to counsel's questions, ALJ's extensive examination and redirect.  In the context of the administrative hearing, the ALJ clearly took advantage of the opportunity to assess Hernandez's literacy where it appeared that counsel's examination of the plaintiff was lacking.  The ALJ's hypothetical questions and the VE's response in terms of unskilled (SVP 1 to 2) occupations clearly contemplate plaintiff's "limited language skills."[85]  Under the circumstances and considering the record as a whole, this Court cannot discount the ALJ's inquiry/analysis of plaintiff's demeanor and communicative ability or the ALJ's conclusions regarding plaintiff's capacity to communicate in the workplace.  Substantial evidence supports the ALJ's findings in this case.

### F.  Fifth Circuit Precedent – *Watson v. Barnhart* – is Inapposite.

Finally, Hernandez contends that his case must be remanded under *Watson v. Barnhart*, 288 F.3d 212 (5th Cir.2002), for a determination of whether he is capable of not only of obtaining employment but also of maintaining employment.[86]  The Fifth Circuit has rejected the notion that the ALJ must, in every case, make a determination on the claimant's ability to maintain employment.[87]

---

other information about how much formal or informal education you may have had through your previous work, community projects, hobbies, and any other activities which might help you to work."

20 C. F. R. § 404.1564, 20 CFR § 404.1564 (all emphasis added).

[85]*See* Note 83, *supra*.

[86]*See Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002) (holding that the ALJ erred in failing to determine whether Watson was capable not only of obtaining employment, but also maintaining it).

[87]*See Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

In *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), the Fifth Circuit clarified that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case."[88] The Fifth Circuit further explained:

> *Watson* required the ALJ to make a finding as to the claimant's ability to maintain a job for a significant period of time, notwithstanding the exertional, as opposed to non-exertional ( *e.g.*, mental illness) nature of the claimant's alleged disability. *Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination. At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time. An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination. Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required. Frank did not establish the factual predicate required by *Watson* to necessitate a separate finding in this regard.[89]

Furthermore, this Court cannot ignore the Fifth Circuit's observation in *Dunbar v. Barnhart*, 330 F.3d 670 (5th Cir.2003) – *i.e.*, that inherent in the definition of RFC is the understanding that the claimant can *maintain* work at the level of the RFC.[90]  Therefore, absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular basis was inherent in the definition of

---

[88]*Id.* at 619.

[89]*Id.* at 619-20.

[90]*See Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003).

27

RFC, the Fifth Circuit does not require a specific finding that a claimant can maintain employment .[91]

In the case at bar, Hernandez did not allege that he could only work for short periods of time but rather alleged that he could not work at all. Consequently, the ALJ was not required to make a separate finding regarding plaintiff's ability to maintain employment. As such, taken as a whole, there is sufficient evidence in the record including multiple treating physicians' assessments indicating that plaintiff was capable of performing at least light level work and therefore not disabled. Plaintiff's treatment records post-dating the revised date of onset (February 13, 2004) are scant. The ALJ properly assessed Hernandez's residual functional capacity. For reasons previously explained, plaintiff's "limited language skills" do not figure into that analysis.

Hernandez has not established the factual predicate required by *Watson* to necessitate a separate finding on his ability to maintain employment. *Frank*, 326 F.3d at 619.

## V. CONCLUSION

This Court's function on appeal is limited to a determination of whether the ALJ's findings are supported by substantial evidence. Substantial evidence of record, considered in light of the applicable legal standards, supports the Commissioner's decision that Hernandez is not disabled within the meaning of the Act. Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment [Rec. Doc. 14] be DENIED, the Commissioner's Cross-Motion for Summary Judgment [Rec. Doc. 16] be GRANTED and that the plaintiff's case be DISMISSED WITH PREJUDICE.

---

[91]*See id.*

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this <u>18th</u> day of June, 2007.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**